**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROY P. KERSHAW, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> VEECO INSTRUMENTS, INC., EDWARD H. BRAUN and JOHN F. REIN, JR., <br><br> Defendants. | **CIVIL ACTION NO.05CV2929 (CM)** <br> **"ECF CASE"** <br><br><br> **CLASS ACTION COMPLAINT** <br><br><br> **JURY TRIAL DEMANDED** |

**NATURE OF THE ACTION**

1.      This is a federal class action on behalf of persons who purchased the securities of Veeco Instruments, Inc. ("Veeco" or the "Company") between November 3, 2003 to February 10, 2005, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, (15 U.S.C. §§ 78j(b) and 78t(a)), and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to § 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to § 27 of the Exchange Act, 15 U.S.C. § 78aa and 28 U.S.C. § 1391(b). Many of the acts and transactions alleged herein, including

the preparation and dissemination of materially false and misleading information, occurred in substantial part in this Judicial District. Additionally, the Company maintains a principal executive office in this Judicial District.

5. In connection with the acts, conduct and other wrongs alleged in this complaint, defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6. Roy P. Kershaw ("Plaintiff"), as set forth in his accompanying certification, incorporated by reference herein, purchased Veeco securities at artificially inflated prices during the Class Period and have been damaged thereby.

7. Defendant Veeco is a Delaware corporation and maintains its principal executive offices in Woodbury, New York. Veeco designs, manufactures, markets and services a line of equipment primarily used by manufacturers in the data storage, semiconductor, compound semiconductor/wireless and high-brightness light emitting diode industries.

8. Defendant Edward H. Braun was, at all relevant times, Chairman and Chief Executive Officer of Veeco. Braun participated in making the false and misleading statements outlined herein.

9. Defendant John F. Rein, Jr. was, at all relevant times, Executive Vice President, Chief Financial Officer and Secretary of Veeco. Rein participated in making the false and misleading statements outlined herein.

10. Defendants Rein and Braun are herein referred to as the Individual Defendants.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

11. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired the securities of Veeco between November 3, 2003 to February 10, 2005, or the Class Period, and who were damaged thereby. Excluded from the Class are defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

12. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Veeco's securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Veeco or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

13. Plaintiff's claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by defendants' wrongful conduct in violation of federal law that is complained of herein.

14. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

15. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by defendants' acts as alleged herein;

(b) whether statements made by defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Veeco; and

(c) to what extent the members of the Class have sustained damages and the proper measure of damages.

16. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

17. On November 3, 2003, the first day of the Class Period, Veeco announced it would acquire TurboDisc, "creat[ing] a Global Leader in Compound Semiconductor Deposition Technologies." The Company stated:

> Woodbury, NY, November 3, 2003—Veeco Instruments Inc. (Nasdaq: VECO) today announced that it has purchased Emcore Corporation's (Nasdaq: EMKR) TurboDisc Metal Organic Chemical Vapor Deposition (MOCVD) business. Combined with Veeco's molecular beam epitaxy (MBE) business, the acquisition makes Veeco the only company that provides both key compound semiconductor epitaxial deposition

technologies. Emcore's MOCVD revenue was $51.1 million for the trailing twelve months ended June 30, 2003. The ability to provide complementary MBE and MOCVD technologies will enable Veeco to address the full range of applications requiring the high performance aspects of compound semiconductor technologies, including lower power, higher frequency operation, and light-emitting characteristics. MOCVD tools are particularly well-suited for the critical first step in the growth of high speed electronic, wireless and optoelectronic compound semiconductor materials employed in advanced wireless telecommunications and rapidly growing high brightness light-emitting diode (LED) lighting applications.

About Emcore's MOCVD Business:
Emcore is a recognized industry leader in MOCVD production systems, with over 500 TurboDisc reactors shipped worldwide. TurboDisc reactors are used in the growth of III-V compounds for numerous compound semiconductor applications, including data and telecommunications modules, cellular telephones and solar cells. Emcore's GaNzilla production systems are the recognized leader in growing gallium nitride-based devices, most notably green, blue and white high brightness LEDs used in backlighting wireless mobile devices, and automotive applications. Emcore's patented TurboDisc technology is known for its unique, high-speed rotating disc deposition technique ideal for high production rates. TurboDisc reactors are capable of depositing a wide variety of materials—GaAs, AlGaAs, InP, InGaAlP, InGaN, AlGaN, SiC and GaN—onto a substrate to grow compound semiconductor materials on the atomic scale.

Management Commentary:
Edward H. Braun, Chairman and CEO of Veeco, commented, "This acquisition strengthens Veeco's position in the compound semiconductor market, as we are now uniquely able to provide "one-stop" shopping for epitaxial deposition solutions—both MOCVD and MBE. The MOCVD market is twice the size of the MBE available market. Emcore's MOCVD business is a good fit with Veeco's acquisition criteria: history of technology leadership and innovation, complementary technology for an existing Veeco market, leading market position, strong R&D and high market growth potential. We believe that Emcore's MOCVD business will be accretive to Veeco on a cash basis by the second quarter of 2004."

Mr. Braun added, "The addition of MOCVD strengthens our existing compound semiconductor and wireless/telecommunications position and permits penetration of the rapidly emerging LED market opportunity." Strategies Unlimited projects the GaN LED market to exceed $1.9B in 2003, growing at 24% CAGR to reach over $4B by 2007.

18.    On November 10, 2003, the Company issued its quarterly report on Form 10-Q for the period ended September 30, 2003. The Company reported revenues of $63.1 million for the quarter and a net loss of ($2.1) million. The Company reported inventory assets of $86.1 million and deferred income tax assets of $39.5 million. The Company also reported $14.2 million in accounts payable. The Company reiterated its statements concerning the TurboDisc acquisition referenced above.

19.    On February 6, 2004, Veeco announced its financial results for the quarter and year ended December 31, 2003. The Company announced revenues of $76.9 million for the quarter, up 22% from the previous quarter. The Company reported a net loss of $4.8 million, or $0.16 per share. Defendant Braun stated:

> "Veeco's fourth quarter orders revenues in EBITA improved both sequentially and year over year. Order strength reflected a broad industry upturn across all of our markets and in all geographic regions. Capacity and technology drivers were evident in semiconductor data storage, wireless, compound semiconductor and scientific research. Fourth quarter orders of $96.8 million (up 51% sequentially) were Veeco's strongest overall orders in 10 quarters. Fourth quarter revenue of $76.9 million was up 22% sequentially.
>
> The November 2003 acquisitions of TurboDisc MOCVD and Advanced Imaging Inc.'s precision lapping technologies allowed us to significantly broaden our product and technology offerings to Veeco's core markets in 2004."
>
> For the full year, Veeco announced its sales were $279.3 million. The Company further stated:
>
> Veeco incurred an operating loss of $9.3 million in 2003 compared to an operating loss of $137.9 million in 2002. Included in the 2003 operating loss was a $1.5 million charge for the write-of in -process RND, a $1.7 million reduction in gross profit from purchase accounting adjustments due to the required capitalization of profit in inventory and permanent elimination of certain deferred revenue, and $5.4 million of merger and restructuring costs. Exclusive of these charges Veeco's 2003 EBIDTA was $13.0 million

compared to $1.3 million in 2002 which also excludes restructuring charges. Veeco's net loss for 2003 was $9.7 million ($0.33) per share compared to a net loss of $123.7 million ($4.25 per share in 2002). Excluding certain charges, 2003 earnings were $0.11 per diluted share compared to the loss of $.010 per share in 2002. Mr. Braun commented, "Industry market conditions improved dramatically in the fourth quarter and we appear to be at the start of a sustainable recovery cycle after two years of historically low capex investment by our customers. Veeco's diversification strategy should serve us well as multiple Veeco markets are forecasted to experience 2004 growth.

We intend to work closely with our key customers to be aligned with their technology roadmaps and capacity planning requirements including: the continued 80 Gb production ramp and 120 Gb disc drive development programs, 90 mm and 300 mm ramps in semiconductor, growth in high brightness and light emitting diodes (HB-LEDS) for backlighting of color displays, RF devices and other wireless/lighting applications, and continued use of our atomic force microscopes in nanoscience research. Veeco's goal is to achieve higher levels of revenue profitability in 2004 through combinations of improved business conditions, the continued focus on cost control, and a broadened product line of key enabling process equipment and metrology technologies.

20. On March 12, 2004, the Company filed its annual report on Form 10-K for the period ended December 31, 2003. The Company confirmed its previously announced results, and reported year-end inventories of $97.6 million and deferred income tax assets of $18.1 million. The Company also reported accounts payable of $19.6 million. The annual report was signed by defendants Braun and Rein. Defendants Braun and Rein also signed certifications in conjunction with the annual report which stated:

> Based on my knowledge, this annual report does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this annual report.
>
> Based on my knowledge, the financial statements, and other financial information included in this annual report, fairly present in all material respects the financial condition, results of operations and cash flows of the registrant as of, and for, the periods presented in this annual report.

> The registrant's other certifying officers and I are responsible for establishing and maintaining disclosure controls and procedures (as defined in Exchange Act Rules 13a-14 and 15d-14) for the registrant and have:
>
> (a) designed such disclosure controls and procedures to ensure that material information relating to the registrant, including its consolidated subsidiaries, is made known to us by others within those entities, particularly during the period in which this annual report is being prepared;
>
> (b) evaluated the effectiveness of the registrant's disclosure controls and procedures as of a date within 90 days prior to the filing date of this annual report (the "Evaluation Date"); and
>
> (c) presented in this annual report our conclusions about the effectiveness of the disclosure controls and procedures based on our evaluation as of the Evaluation Date;
>
> The registrant's other certifying officers and I have disclosed, based on our most recent evaluation, to the registrant's auditors and the audit committee of registrant's board of directors (or persons performing the equivalent functions):
>
> (a) all significant deficiencies in the design or operation of internal controls which could adversely affect the registrant's ability to record, process, summarize and report financial data and have identified for the registrant's auditors any material weaknesses in internal controls; and
>
> (b) any fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal controls; and
>
> The registrant's other certifying officers and I have indicated in this annual report whether there were significant changes in internal controls or in other factors that could significantly affect internal controls subsequent to the date of our most recent evaluation, including any corrective actions with regard to significant deficiencies and material weaknesses.

21.     On April 26, 2004, Veeco announced its financial results for the quarter ended March 31, 2004. The Company reported first-quarter 2004 revenues of $94.5 million, up 23% sequentially from the prior quarter, and a net loss of $0.7 million, or ($0.02) per share. Defendant Braun stated:

> "We are pleased to report the first quarter revenue's earnings and bookings all exceeded our quarterly guidance. . . . Veeco received several multiple system orders for our TurboDisc MOCVD products from worldwide customers who are increasing their manufacturing capacity of green, blue and white light emitting diodes (LEDs). The growth of this newly acquired product line has surpassed our initial expectations and we see the LED market as an exciting growth opportunity for Veeco in 2004 and 2005. . . . First quarter 2004 orders were the strongest in 13 quarters and are indicative of the first growth opportunities available to Veeco through our multi-market strategy."

22. On May 3, 2004, the Company issued its quarterly report on Form 10-Q for the period ended March 31, 2004, in which it confirmed the above-referenced results. The Company also reported inventory assets of $104.4 million, deferred income tax assets of $9.7 million, and accounts payable of $25.1 million. The Company also stated:

> By region, there continues to be a shift in sales from the U.S. to the Asia Pacific region, although all regional sales have increased due to the TurboDisc business and All acquisitions, particularly the Asia Pacific region, which saw a $10.2 million increase in sales in the first quarter of 2004 due to the acquired companies. The Company believes that there will continue to be quarter-to-quarter variations in the geographic distribution of sales.

23. On July 26, 2004, the Company announced its financial results for the quarter ended June 30, 2004. The release was entitled "Results Were Above Prior Quarter and Prior Year and at High-End of Guidance." The Company reported second quarter 2004 sales of $102.9 million with net income of $1.6 million or earnings per diluted share of $0.05 per share. Defendant Braun stated:

> "We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets.
>
> We are pleased to report that Veeco's second quarter 2004 orders, revenue and earnings all exceeded the prior year and prior quarter, and met or exceeded our guidance as we continue to experience a multi-market recovery in our core semiconductor, compound semiconductor/wireless and data storage markets."

24.     On August 3, 2004, the Company issued its quarterly report on Form 10-Q for the period ended June 30, 2004, in which it confirmed the above-stated results. The Company also reported inventory assets of $108.1 million, deferred income-tax assets of $16.1 million, and accounts payable of $46.5 million. The report was signed by defendants Braun and Rein. Defendants Braun and Rein also signed certification that confirmed that these results for the period ended June 30, 2004, did not contain any untrue statements of material facts or omit material facts necessary to make them, in light of the circumstances under which the statements were made, not misleading. Those certifications were essentially identical to those referenced in above paragraph 27.

25.     On October 12, 2004, Veeco announced its financial results for the quarter ended September 30, 2004. The Company stated:

> Veeco Instruments Inc. (Nasdaq: VECO) today announced that weak industrywide capital equipment conditions, particularly in compound semiconductor adversely impacted its results for the quarter ended September 30, 2004.
>
> As a result Veeco's orders for the third quarter of 2004 are expected to be approximately $80 million, compared to $64 million in the third quarter of 2003 and $125 million in the second quarter of 2004. (Veeco's order guidance provided on 7/26/04 was $125-130 million).
>
> Veeco expects third quarter 2004 revenues to be approximately $93 million, compared to $63 million in the third quarter of 2003, and $103 million in the second quarter of 2004. (Revenue guidance was $105-110 million).
>
> Veeco's third quarter 2004 GAAP loss is expected to be between ($0.06) and ($0.04) per share compared to third quarter 2003 GAAP loss of ($0.07 per share and GAAP earnings of $0.05 per diluted share in the second quarter of 2004. (Veeco's third quarter guidance was GAAP earnings between $0.06 and $0.09 per diluted share on a GAAP basis).
>
> Like many suppliers in the semiconductor capital equipment industry, Veeco typically books approximately 60% of its orders in the last several weeks of the quarter. However, in the third quarter, many of these late quarter orders did not occur as customers carefully managed their capital spending.

> Compared to the second quarter, Veeco's orders for MOCVD equipment from light emitting diode (LED) manufacturers decreased approximately 70%. This dramatic decrease in MOCVD business resulted from spending previews initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco equipment purchased in the first half of 2004. Veeco's data storage and semiconductor orders declined approximately 30% from the second quarter while scientific research orders increased approximately 20% from the same period.
>
> Defendant Braun commented:
>
> "We were disappointed not only by our third quarter performance but by our lack of visibility of this slowdown. In the near term we expect our customers' current capital spending reluctance to continue but believe it will be outweighed by their need to fund their 2005 new product technology roadmaps and to invest in the expected high growth of next generation consumer electronics. Despite this setback, we still expect 2004 to be a strong growth year for Veeco compared to 2003. Veeco remains well positioned to provide leadership technologies for growth applications in semiconductor data storage, compound semiconductor and scientific research."

26.     On November 9, 2004, the Company filed its quarterly report on Form 10-Q for the period ended September 30, 2004. The Company confirmed the above results - net sales for the quarter of $92.4 million and net loss of ($0.6 million). The Company also reported inventory assets of $123.9 million, deferred income tax assets of $15.3 million and accounts payable of $47.1 million. The Company further reported that:

> "the improvement in epitaxial process equipment is primarily due to $21.3 million in sales from the TurboDisc business, partially offset by a $0.2 million net decrease in other business. . . . Compared to the second quarter orders to HBLED/Wireless customers decreased 71.4% due to a $30.3 million decrease in TurboDisc orders. This decrease in business resulted from spending freezes initiated by many Asian customers at the end of the quarter as they paused to absorb the significant amount of Veeco account purchases in the first half of 2004."

The Company further stated, "Epitaxial process equipment margins improved from 37.0% to 39.5%, due to the favorable mix of TurboDisc MOCDD sales which are higher in margin than the MBE products." The quarterly report was signed by defendants Braun and Rein and certified as stated above in Paragraph xx.

27.     The above statements were false and misleading because the defendants knowingly or recklessly failed to disclose that the Company had (a) improperly valued the inventory and accounts payable at TurboDisc in order to make the acquisition look more attractive to the market; (b) falsely recognized revenue at TurboDisc during the Class Period; and (c) improperly overvalued the Company's deferred tax assets. As a result of defendants' false and misleading statements, the financial results of Veeco were artificially and materially inflated at all times during the Class Period.

## FIRST CLAIM

### Violation Of Section 10(b) Of
### The Exchange Act Against And Rule 10b-5
### Promulgated Thereunder Against All Defendants

28.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

29.     During the Class Period, defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Veeco securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

30.     Defendants (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Veeco securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5. All defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

31.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about the business, operations and future prospects of Veeco as specified herein.

32.     These defendants employed devices, schemes, and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Veeco value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and omitting to state material facts necessary in order to make the statements made about Veeco and its business operations and future prospects in the light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of Veeco securities during the Class Period.

33.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or

directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of his or her responsibilities and activities as a senior officer and/or director of the Company was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of and had access to other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew or recklessly disregarded was materially false and misleading.

34.     The defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Veeco's operating condition and future business prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by defendants' overstatements and misstatements of the Company's business, operations and earnings throughout the Class Period, defendants, if they did not have actual knowledge of the misrepresentations and omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

35.     As a result of the dissemination of the materially false and misleading information and failure to disclose material facts, as set forth above, the market price of Veeco securities was

artificially inflated during the Class Period. In ignorance of the fact that market prices of Veeco's publicly-traded securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by defendants, or upon the integrity of the market in which the securities trade, and/or on the absence of material adverse information that was known to or recklessly disregarded by defendants but not disclosed in public statements by defendants during the Class Period, Plaintiff and the other members of the Class acquired Veeco securities during the Class Period at artificially high prices and were damaged thereby.

36.     At the time of said misrepresentations and omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true. Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Veeco was experiencing, which were not disclosed by defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Veeco securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

37.     By virtue of the foregoing, defendants have violated Section 10(b) of the Exchange Act, and Rule 10b-5 promulgated thereunder.

38.     As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM

**Violation Of Section 20(a) Of
The Exchange Act Against the Individual Defendants**

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     The Individual Defendants acted as controlling persons of Veeco within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contend are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

41.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

42.     As set forth above, Veeco and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of defendants' wrongful conduct, Plaintiff and other members

of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

    **WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

    (a)  Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying Plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiff's counsel as Lead Counsel;

    (b)  Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    (c)  Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    (d)  Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated: March 16, 2005
New York, NY

**MURRAY, FRANK & SAILER LLP**

_____/s/_____
Eric J. Belfi (EB-8895)
275 Madison Avenue, 8th Floor
New York, New York 10016
Telephone: (212) 682-1818
Facsimile: (212) 682-1892

**GOODKIND LABATON RUDOFF & SUCHAROW LLP**
Christopher J. Keller
100 Park Avenue
12th Floor
New York, NY 10017
Telephone: (212) 907-0853
Facsimile: (212) 883-7053

**Attorneys for Plaintiff**