UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

─────────────────────────────────── x

IN RE VEECO INSTRUMENTS INC.                          05 MDL 01695 (CM)
SECURITIES LITIGATION

─────────────────────────────────── x

THIS DOCUMENT RELATES TO ALL ACTIONS
─────────────────────────────────── x

## ORDER AWARDING ATTORNEYS' FEES AND EXPENSES TO PLAINTIFFS' LEAD COUNSEL, AND REIMBURSEMENT OF REASONABLE COSTS AND EXPENSES TO LEAD PLAINTIFF FOR REPRESENTATION OF THE CLASS

McMahon, J.:

### I.    INTRODUCTION

Concluding almost two years of litigation, Steelworkers and Plaintiffs' Lead Counsel have obtained a settlement of $5,500,000 in cash, plus interest, for the Class (the "Settlement"). The Settlement was achieved after extensive motion practice and fact and expert discovery, and after the parties participated in two mediation sessions before a highly respected mediator, the Honorable Nicholas H. Politan. Moreover, the Settlement was reached only after extensive and near-complete pre-trial preparations, including submission of trial exhibits and a full-day pre-trial hearing before this Court on June 28, 2007. The parties executed an agreement in principle to settle the litigation on July 5, 2007, only days before trial was scheduled to begin on July 9, 2007.

In light of the risks posed by continued litigation, the $5.5 million Settlement is an excellent result for Plaintiffs. Moreover, published data on securities fraud settlements further confirms the quality of the proposed Settlement. The $5.5 million settlement results in an estimated average recovery of $.87 per share of Veeco common stock for the approximately 6.3 million shares which suffered damages in accordance with this Court's June 28, 2007 opinion, or 23.2% of the estimated maximum $3.75 per share suffered by any Class Member. The 23.2% possible recovery of estimated damages exceeds the median percentage reported by Cornerstone Research for settlements overall, which was 3.6% through year-end 2005 and 2.4% for 2006.[1]

As compensation for the efforts expended to achieve the settlement for the Class, Lead

───────────────

[1] *See* Laura E. Simmons & Ellen M. Ryan, *Cornerstone Research, Securities Class Action Settlements: 2006 Review and Analysis* (Cornerstone Research 2007), at 6, *available at* http://www.cornerstone.com (the "Cornerstone Report").

Counsel Berger & Montague applied for counsel fees of $1,650,000 – equaling 30% of the Settlement Fund – and for reimbursement of Plaintiffs' Counsel's out-of-pocket expenses in the amount of $774,329.29. The 30% fee requested is well within the range of fees customarily sought by (and awarded to) experienced counsel in similar securities class actions, and the fairness of the percentage fee is underscored by a lodestar crosscheck, which reveals that counsel will not be compensated for a substantial portion of the time they devoted to litigating the Action on behalf of the certified Class. Plaintiffs' Counsel litigated the case to the eve of trial on a wholly contingent basis, incurring $774,329.29 in out-of-pocket expenses, and spent over 12,000 hours incurring over $4.5 million in lodestar. The lodestar crosscheck shows that the fee requested in fact represents a fractional multiplier - only about 35.91% - of the aggregate lodestar accumulated by Plaintiffs' counsel.[2] Berger & Montague alone bore all the risks and out-of-pocket expenses for almost two years during this litigation against an able opponent. The Steelworkers, a sophisticated institutional investor, which was actively engaged in the prosecution of this Action, approved the Settlement and fee percentage sought by Plaintiffs' Counsel.

No Class Member has objected to the fee and expenses requested. A total of 15,528 notices of the settlement were mailed to Class Members advising them of Plaintiffs' Counsel's intent to apply to the Court for an award of attorneys' fees of 30% of the Settlement Fund, reimbursement of out-of-pocket expenses not to exceed $775,000, and reimbursement to the Steelworkers of their costs and expenses for representing the Class of $16,089. Information regarding the settlement, including downloadable copies of the Notice and Claim Form, was made available through the Claim Administrator's website. The lack of any objections further supports the fairness and reasonableness of the fee and expense reimbursement requests.[3]

For the foregoing reasons, as explained in greater detail below, the Court awards to Plaintiffs' Counsel the fees and expenses that it seeks, as well as reimbursement of costs and expenses to Lead Plaintiff.

## II.    THE REQUESTED FEE IS FAIR AND REASONABLE

### A.    A Reasonable Percentage of the Fund Recovered Comports with the Legal Standards Governing Awards of Attorneys' Fees in this Circuit

Pursuant to the "'equitable' or 'common fund' doctrine established more than a century ago in *Trustees v. Greenough*, 105 U.S. 527, 532-533, 15 Otto 527, 26 L. Ed. 1157 (1881), *Trustees v. Greenough*, 105 U.S. 527, 532-33 (1881), attorneys who create a common fund to be

---

[2] Lead Counsel will reimburse from its fee award the law firm Milberg Weiss LLP for the time it expended in serving as liaison counsel from April 2005 until the time the Court decided to dispense with liaison counsel in view of the ease of electronic filing. (Order of October 12, 2005.) Lead Counsel has included the out-of-pocket expenses incurred by Milberg Weiss as liaison counsel during that period in Lead Counsel's fee and expense petition.

[3] Moreover, there has been only one request for exclusion.

shared by a class are entitled to an award of fees and expenses from that fund as compensation for their work." *In re American Bank Note Holographics*, 127 F. Supp. 2d 418, 430 (S.D.N.Y. 2001) (McMahon, J.). *See In re EVCI Career Colleges Holding Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 57918, at *43 (S.D.N.Y. July 27, 2007) (McMahon, J.) ("The Supreme Court has recognized that 'a lawyer who recovers a common fund for the benefit of persons other than . . . his client is entitled to a reasonable attorney's fee from the fund as a whole.'" (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980), and *Savoie v. Merchants Bank*, 84 F.3d 52, 56 (2d Cir. 1996))). Fees and expenses are paid from the common fund so that all class members contribute equally towards the costs associated with litigation pursued on their behalf. *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (the common fund doctrine "prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost").

Courts have recognized that, in addition to providing just compensation, awards of attorneys' fees from a common fund serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (McMahon, J.). The Supreme Court has stated that private securities actions, such as the instant action, provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985) (citation omitted); *accord Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2007 WL 1773208, at *4 (June 21, 2007).

In *Goldberger*, the Second Circuit emphasized the need for fee awards to plaintiffs' counsel to be fair and reasonable, and described two acceptable fee calculation methodologies. One is the "lodestar" method, under which "the district court scrutinizes the fee petition to ascertain the number of hours reasonably billed to the class and then multiplies that figure by an appropriate hourly rate." *Goldberger*, 209 F.3d at 47. Once the lodestar is calculated, the court "may, in its discretion, increase the lodestar by applying a multiplier based on 'other less objective factors,' such as the risk of the litigation and the performance of the attorneys." *Id.* (citation omitted). The second method for calculating fees is the "percentage of recovery" method. *Id.* "In determining what percentage to award, courts have looked to the same 'less objective' factors that are used to determine the multiplier for the lodestar." *Id.* (citation omitted). Because the percentage of recovery approach does not require courts to "exhaustively scrutinize[]" attorneys' time records, that methodology is "simpler" than the lodestar approach. *Id.* at 47, 50.

Indeed, the Supreme Court has held that where a common fund has been created for the benefit of a class as a result of counsel's efforts, the award of counsel's fees should be determined by the percentage of recovery method. *See, e.g., Boeing*, 444 U.S. at 478-79; *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The advantages of this methodology led the Second Circuit in *Goldberger* to reaffirm this Circuit's view that it is an accepted means for calculating attorneys' fees in class actions, *Goldberger*, 209 F.3d at 47-50, a view which was expressed again just recently. *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005). The Second Circuit in *Wal-Mart* observed that "[t]he trend in this Circuit is toward the percentage method." *Id.* at 122.

Moreover, from a public policy perspective, this Court has noted that "[t]he percentage method is attractive because it directly aligns the interests of the Class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation, which clearly benefits both litigants and the judicial system." *American Bank Note*, 127 F. Supp. 2d at 431-32. The percentage approach "is uniquely the formula that mimics the compensation system actually used by individual clients to compensate their attorneys," often serves as a favorable substitute for more costly judicial monitoring of the attorney's performance, and "can serve as a proxy for the market in setting counsel fees." *Id.* at 432 (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d 393, 397 (S.D.N.Y. 1999), and *In re Cont'l Illinois Sec. Litig.*, 962 F.2d 566, 568 (7th Cir.1992)).

This Court has recently stated that the percentage of recovery method continues to be the trend of district courts in this Circuit, and that it "has been expressly adopted in the vast majority of circuits." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *44-46 & *46 n.3 (collecting cases). This Court observed:

> For many years, courts within this Circuit recognized that "Support for the lodestar/multiplier approach in common fund cases has eroded, and there has been a 'groundswell of support for *mandating* a percentage-of-the-fund approach' in the common fund cases."

*Id.* at **46-47 n. 3. (citing *In re Sumitomo Copper Litig.*, 74 F. Supp. 2d at 397 (citation omitted, emphasis in original)). *See also Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *28 (S.D.N.Y. Jan. 31, 2007). This view is in accord with the dictates of the Private Securities Litigation Reform Act ("PSLRA"), which provides that an award of fees and expenses should constitute "a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6)(emphasis added). *See EVCI*, 2007 U.S. Dist. LEXIS 57918, at *46.

## B.    The Requested Fee is Fair and Reasonable as a Percentage of the Settlement Benefit Obtained for the Class

The requested amount of attorneys' fees, $1.65 million – representing 30% of the total all-cash recovery to the Class of $5.5 million – is consistent with fees awarded in other securities class action settlements in this Circuit.[4] "Thirty percent of a larger settlement fund could constitute a windfall; however, a settlement fund of this size does not create such an issue." *Taft*, 2007 U.S. Dist. LEXIS 9144, at *32; *Hicks*, 2005 WL 2757792, at *9 ("A settlement amount of

---

[4] *See, e.g., Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *32 (S.D.N.Y. Jan. 31, 2007) (awarding 30% of $15.17 million settlement); *Hicks v. Morgan Stanley*, 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005)(30% of $10 million settlement); *In re Warnaco Group, Inc. Sec. Litig.*, 2004 WL 1574690, at *3 (S.D.N.Y. July 13, 2004) (30% of $12.85 million settlement); *In re Bisys Sec. Litig.*, 2007 U.S. Dist. LEXIS 51087, at * 8 (S.D.N.Y. July 11, 2007) (30% of $65.87 million settlement).

$10 million does not raise the windfall issue in the same way as would a $100 million settlement, and a 30% fee does not produce such a windfall."). A thirty percent fee, requested here by Plaintiffs' Counsel, is consistent with fees awarded in similar class action settlements of comparable value.[5]

## C.    The Percentage Fee Requested by Plaintiffs is Reasonable Under the Second Circuit's *Goldberger* Factors

The Second Circuit has set forth the following six factors that should be considered by District Courts, regardless of which method is used, in determining the reasonableness of the fee:

(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50; *Wal-Mart*, 396 F.3d at 122 ("Irrespective of which method is used, the '*Goldberger* factors' ultimately determine the reasonableness of a common fund fee."). The lodestar value then acts as a "cross check," and the hours submitted by the attorneys are reviewed but not exhaustively scrutinized. *Goldberger*, 209 F.3d at 50.

Consideration of the relevant *Goldberger* factors supports an award of a fee of 30% of the settlement fund to Lead Plaintiffs' Counsel in this case.

## 1.    The Significant Time and Labor Expended by Plaintiffs' Counsel

---

[5] *See, e.g., The Takara Trust v. Molex, Inc.*, No. 05-1245 (N.D. Ill. Mar. 1, 2007) (30% of $10.5 million settlement); *In re Amerco Sec. Litig.*, No. 04-2182 (D. Ariz. Nov. 2, 2006) (30% of $7 million settlement); *Davidco Investors, LLC v. Anchor Glass Container Corp.*, No. 04-2561 (M.D. Fla. Mar. 16, 2007) (30% of $5.5 million settlement); *In re Carreker Corp. Sec. Litig.*, No. 03-250 (N.D. Tex. Aug. 16, 2006) (30% of $5.25 million settlement); *Marrari v. Medical Staffing Network Holdings, Inc.*, No. 04-80158 (S.D. Fla. March 6, 2007) (30% of $5 million settlement); *Culp v. Gainsco, Inc.*, No 04-723 (N.D. Tex. Feb. 13, 2007) (30% of $4 million settlement); *In re Dobson Communications, Inc. Sec. Litig.*, No. 04-1394 (W.D. Okla. Mar. 20, 2007) (30% of $3.4 million settlement).

Indeed, there are numerous other common fund cases in this District alone where fees were awarded in the amount of 33 1/3 % of the settlement fund, an amount greater than that requested here. *See, e.g., Strougo v. Bassini*, 258 F. Supp. 2d 254, 262 (S.D.N.Y. 2003); *Maley*, 186 F. Supp. 2d at 370; *Newman v. Caribiner Int'l Inc.*, No. 99 14 Civ. 2271 (S.D.N.Y. Oct. 19, 2001); *In re Net Ease.com, Inc. Sec. Litig.*, C.A. 01-CV-9405 (S.D.N.Y. May 30, 2003); *Meridian Inv. Club v. Delta Financial Corp.*, Master File No. CV-99-7033 (S.D.N.Y. April 14, 2003); *Lemmer v. Golden Books Family Entm't Inc.*, 98 Civ. 5748 (S.D.N.Y. Oct. 12, 1999); *Maywalt v. Parker & Parsley Petroleum Co.*, 963 F. Supp. 310, 313 (S.D.N.Y. 1997).

The first factor set forth in *Goldberger* for determining an appropriate fee is "the time and labor expended by counsel." 209 F.3d at 50. Plaintiffs' Counsel has devoted over 12,000 hours to the prosecution and settlement of this Action, including the following matters:

- extensive pre-filing investigatory work, including research, review, and analysis of public filings, articles, and analyst reports about Veeco.

- moving for certification of the Class under Fed. R. Civ. P. 23, and, at the same time, opposing Defendants' motion to dismiss. In connection with the motion for class certification, Lead Plaintiff produced documents in response to Defendants' requests and defended the depositions of the proposed Class Representative – Lead Plaintiff Steelworkers – and its asset manager.

- review of approximately 225,000 pages of documents produced by Defendants, including documents produced as a result of Lead Plaintiff's motion to compel Defendants' production of documents on backup tapes. Lead Plaintiff also subpoenaed documents from twenty-six third-parties, including Veeco's auditor Ernst & Young, and received and reviewed approximately ten thousand pages of documents from Ernst & Young alone.

- conducting ten days of depositions, including the depositions of: Individual Defendants Braun, Rein and Kiernan; three Ernst & Young partners involved in Veeco's audit; former TurboDisc controller Bruce Huff, to whom the Company attributed the improprieties leading to the restatement; and Veeco's internal auditors during the Class Period, Gary Reifert and Herman Birnbaum. Lead Plaintiff also served interrogatories and requests for admission upon Defendants.

- during expert discovery, exchanging reports of accounting and damages experts, deposing Defendants' damages expert, and defending depositions of Plaintiffs' accounting and damages experts.

- engaging in extensive motion practice, including a number of contentious discovery motions involving briefing and court appearances, for example: (i) Lead Plaintiffs' motion to compel Defendants to produce documents concerning the internal investigation of TurboDisc by Veeco and Jefferson Wells; and (ii) Lead Plaintiffs' motion to obtain documents on Defendants' backup tapes.

- completing substantial preparation for trial, including submission of pre-trial order and exhibits, and filing responses to motions *in limine*. The parties attended a pre-trial conference on June 28, 2007 and were prepared to select a jury on July 9, 2007.

In total, Plaintiffs' Counsel reported spending over 12,000 hours litigating this case up until trial, representing a lodestar of about $4.6 million. Plaintiffs' Counsel also incurred $774,329.29 in out-of-pocket expenses on this matter since its initiation. Plaintiffs' Counsel's

efforts were undertaken on a contingent fee basis despite the possibility that Plaintiffs would not prevail in this litigation (and would therefore receive no compensation). The tasks performed by Plaintiffs' Counsel were necessary in order to achieve the Settlement, and the time and labor expended by counsel in producing this Settlement supports the requested fee. Indeed, Plaintiffs' fee request represents a fractional multiplier of .3591 in this case. As a result, Lead Counsel will receive no compensation for almost two-thirds of its time spent litigating this case.

## 2.    The Complexity, Magnitude and Risks of Litigation, and the Contingent Nature of the Fee Supports the Requested Fee

A securities case, "by its very nature, is a complex animal." *Maley*, 186 F. Supp. 2d at 372 (quotation omitted). Berger & Montague, P.C. prosecuted this Action by itself against a team of defense lawyers from the well-known law firm Gibson Dunn & Crutcher, LLP, for almost two years, up until the eve of trial. Plaintiffs' Counsel did not "piggy back" on any prior governmental action related to Veeco. *Maley*, 186 F. Supp. 2d at 371. Prosecution of this Action was heavily dependent on expert testimony, thereby adding substantially to its costs. Plaintiffs have encountered – and would certainly continue to encounter at trial, absent the Settlement – significant litigation risks, including successfully proving all of the necessary elements to establish that Defendants' dissemination of materially false and misleading statements regarding Veeco violated Rule 10b-5, and proving that any or all of the price drop of the stock was attributable to the disclosure of the alleged fraud as opposed to market factors.

The complex and difficult issues in this case included the following:

- the difficulty of proving Plaintiffs' case through the testimony of Veeco's employees and former employees, who could be considered hostile witnesses.

- the difficulty of establishing loss causation in light of the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

- the complexity of the legal and factual accounting issues involved, including GAAP and the relative novelty of the internal control issues involving the Sarbanes-Oxley Act that had to be presented to substantiate Plaintiffs' allegations of fraud and scienter.

- the difficulty of proving that Defendants' public statements were materially false and misleading.

- the difficulty in proving that any or all of the Defendants acted with scienter where there was no insider selling and no finding of wrongdoing by any governmental or other investigative body.

The Courts of this Circuit, including this District, have expressly recognized that the contingent nature of counsel's fee, with the built-in risk of litigation, is a highly relevant factor in determining the fee to be awarded. As the Second Circuit stated:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974); *In re Warner Communications Sec. Litig.*, 618 F. Supp. 735, 747 (S.D.N.Y. 1985) ("Numerous cases have recognized that the attorneys' contingent fee risk is an important factor in determining the fee award.") (citations omitted).

Indeed, the risk of non-payment in complex cases, such as this one, is very real. There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise. There is no guarantee of reaching trial, and even a victory at trial does not guarantee recovery.[6] As the Court stated in *Warner*: "Even a victory at trial is not a guarantee of ultimate success. . . . An appeal could seriously and adversely affect the scope of an ultimate recovery, if not the recovery itself." 618 F. Supp. at 747-748.

### 3. The Quality of Plaintiffs' Counsel's Representation and Substantial Benefit to the Class Supports the Requested Fee

The result achieved and the quality of the services provided are also important factors to be considered in determining the amount of reasonable attorneys' fees. *See, e.g., Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 547-48 (S.D. Fla. 1988) ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained.").

---

[6] *See, e.g., Robbins v. Koger Props.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal on loss causation grounds and judgment entered for defendant); *Eisenstadt v. Centel Corp.*, 113 F.3d 738 (7th Cir. 1997) (Seventh Circuit affirmed the lower court's granting of summary judgment in favor of defendants); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 – on the basis of 1994 Supreme Court opinion); *Backman v. Polaroid Corp.*, 910 F.2d 10 (1st Cir. 1990) (*en banc*) (class won a substantial jury verdict and a motion for judgment n.o.v. was denied, but on appeal the judgment was reversed and the case dismissed, after 11 years of litigation); *Winkler v. NRD Mining, Ltd.*, 198 F.R.D. 355 (E.D.N.Y. 2000) (granting defendants' motion for judgment as matter of law after jury verdict for plaintiffs); *Krinsk v. Fund Asset Mgmt., Inc.*, 715 F. Supp. 472 (S.D.N.Y. 1988), *aff'd*, 875 F.2d 404 (2d Cir. 1989) (verdict for defendants after trial); *Landy v. Amsterdam*, 815 F.2d 925 (3d Cir. 1987) (directed verdict for defendants after five years of litigation; affirmed on appeal); *Bentley v. Legent Corp.*, 849 F. Supp. 429 (E.D. Va. 1994) (directed verdict in favor of defendants after plaintiffs' presentation of its case to jury).

In this case, the quality of the representation of Plaintiffs' Counsel is best evidenced by the result. Despite vigorous opposition by Defendants at every stage up to trial, Plaintiffs obtained a Settlement of $5.5 million in cash. Not only did Plaintiffs' Counsel's "skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Denney v. Jenkens & Gilchrist*, 230 F.R.D. 317, 352 (S.D.N.Y. 2005).

Defendants were represented by a well-staffed team of lawyers from the New York office of Gibson, Dunn & Crutcher, LLP, one of the country's largest law firms, who tenaciously challenged Plaintiffs at every stage of the litigation up until the eve of trial. That Plaintiffs' Counsel was able to obtain a substantial settlement from these Defendants confirms the quality of Plaintiffs' Counsel's representation in this matter, and is a factor in determining the reasonableness of the fee request. *See, e.g., Taft*, 2007 US Dist. LEXIS 9144, at *31 (noting that, in determining the quality of the representation, courts review, *inter alia*, the recovery obtained and the backgrounds of the lawyers involved in the suit).

## 4. The Requested Fee Award is Reasonable in Relation to the Settlement Amount

As discussed above, a fee of 30% of the $5.5 million settlement fund is consistent with fees awarded in a similar class action settlements of comparable value. Moreover, it does not create a windfall. *See Wal-Mart*, 396 F.3d at 122; *Taft v. Ackermans*, 2007 U.S. Dist. LEXIS 9144, at *32; *In re Greenwich Pharm. Sec. Litig.*, 1995 WL 251293, at * 7 (E.D. Pa. April 26, 1995) (fee award of 33% of $4.3 million settlement does not present danger of windfall that would accompany a "megafund" of, for example, $100 million settlement).

## 5. Public Policy Considerations Fully Support the Requested Fee

The Second Circuit has also noted that "public policy considerations" should be considered in determining the fee awarded to plaintiffs' counsel in class actions. *Goldberger*, 209 F.3d at 50.

Private enforcement of the federal securities laws, as is the nature of the action here, is a necessary adjunct to government intervention because neither the SEC nor the Justice Department has sufficient assets to address all forms of securities fraud. *See, e.g., Bateman Eichler, Hill Richards, Inc.*, 472 U.S. at 310 (lawsuits brought by investors provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action'" (quoting *J. I. Case Co. v. Borak*, 377 U.S. 426, 432 (1964))). As this Court has stated:

It is . . . imperative that the filing of such contingent lawsuits not be chilled by the imposition of fee awards which fail to adequately compensate counsel for the risks for pursuing such litigation and the benefits which would not otherwise have been achieved but for their persistent and diligent efforts. Private attorneys should be encouraged to take the risks required to represent those who would not otherwise be protected from socially undesirable activities like securities fraud."

*Maley*, 186 F. Supp. 2d at 374. *See also Goldberger*, 209 F.3d at 51 (noting the "commendable sentiment in favor of providing lawyers with sufficient incentive to bring common fund cases that serve the public interest").

Moreover, public policy considerations support the award in this case because the Lead Plaintiff and Class Representative, Steelworkers Pension Trust – a large public pension fund – conscientiously supervised the work of lead counsel and has approved the fee request. Since passage of the PSLRA, courts – including this Court – have found that in a PSLRA case, a fee request which has been approved and endorsed by a  properly-appointed lead plaintiff is "presumptively reasonable," especially where the lead plaintiff is a sophisticated institutional investor. *EVCI*, 2007 U.S. Dist. LEXIS 57918, at \*49-50 (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001)).  This accords with Congress's belief that institutions would be in the best position to monitor the ongoing prosecution of the litigation and to assess the reasonableness of counsel's fee request.  *In re EVCI*, 2007 U.S. Dist. LEXIS 57918, at \*50 n.4.

## D.     A "Cross-Check" Of Plaintiffs' Counsel's Lodestar Demonstrates the Reasonableness of the Requested Percentage Fee

The Second Circuit "encourages" an analysis of counsel's lodestar "as a 'cross-check' on the reasonableness of the requested percentage." *Goldberger*, 209 F.3d at 50; *EVCI*, 2007 U.S. Dist. LEXIS 57918, at \*54.  Where the lodestar is "used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50.

### 1.     The Number of Hours Expended By Plaintiffs' Counsel Was Reasonable

The starting point for a lodestar analysis is the calculation of the lodestar – which is "comprised of the amount of hours devoted by counsel multiplied by the normal, non-contingent hourly billing rate of counsel." *In re Prudential Sec. Ltd. P'shps. Litig.*, 985 F. Supp. 410, 414 (S.D.N.Y. 1997); *see EVCI*, 2007 U.S. Dist. LEXIS 57918, at \*54. Here, Plaintiffs' Counsel devoted 12,185 hours to this matter, and their lodestar through October 18, 2007, was $4,594,233.40. The requested fee represents only a fractional multiplier of the lodestar. Plaintiffs' Counsel performed substantial work on behalf of the Class, litigating this case to the eve of trial against a formidable opponent.

Berger & Montague bore all the risks and expenses of the litigation, including extensive fact and expert discovery, motion practice, participation in and preparation of submissions for mediations, and preparation for trial.  Berger & Montague was efficient in litigating this action, as it is highly experienced in prosecuting securities law claims and shareholder class actions. *Cf. Teachers' Ret. Sys. v. A.C.L.N., Ltd.*, 2004 U.S. Dist. LEXIS 8608, at \*20 (S.D.N.Y. May 14, 2004) (noting that the skill and prior experience of counsel in the specialized field of shareholder securities litigation is relevant in determining fair compensation).

## 2.    The Rates Charged By Plaintiffs' Counsel Are Reasonable

The second step in the lodestar cross-check analysis is to evaluate the reasonableness of the current billing rates charged by plaintiffs' counsel. The Second Circuit in *Goldberger* noted that the overall goal of the fee-setting process is to replicate the rate that counsel would be paid in a perfect market. 209 F.3d at 52 ("market rates, where available, are the ideal proxy for their compensation"). The use of current rates to calculate the lodestar figure has been repeatedly endorsed by courts as a means of accounting for the delay in payment inherent in class actions and for inflation. *See, e.g., Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment" by applying "current" rate is appropriate); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) (current rates "should be applied in order to compensate for the delay in payment").

In determining the propriety of the hourly rates charged by plaintiffs' counsel in class actions, courts have held that the standard is the rate charged in the community where the services were performed for the type of service performed by counsel. *See Luciano v. Olsten Corp.*, 109 F.3d 111, 115 (2d Cir. 1997) ("[t]he 'lodestar' figure should be 'in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation'" (quoting *Blum*, 465 U.S. at 896 n.11)); *accord In re NASDAQ Market-Makers Antitrust Litig*, 187 F.R.D. 465, 489 (S.D.N.Y. 1998); *see also Sutton v. Bernard*, 2007 WL 2963940, at *4 (7th Cir. Oct. 12, 2007) (in deciding fee award in common fund cases, courts should look to marketplace for legal services as guide to what is reasonable). Viewed in light of a "marketplace" barometer, Plaintiffs' Counsel's rates are reasonable.

In class actions, courts in this district and around the country have consistently found to be reasonable rates comparable to those at issue here, given the nature of plaintiffs' counsel's work in such cases and the risks associated with financing class actions.[7]  Thus, substantial precedent – as well as a market check – demonstrates that the rates utilized by Plaintiffs' Counsel in calculating its lodestar is are reasonable.

## E.    The Requested Fee Is Reasonable Because It Implies a Fractional Multiplier, Indicating that Plaintiffs' Counsel Will Not Be Compensated for Much of Their Time Spent Litigating This Case

Courts have continually recognized that, in instances where a lodestar analysis is employed to calculate attorneys' fees or used as a "cross-check" for a percentage of recovery analysis, counsel may be entitled to a "multiplier" of their lodestar rate to compensate them for the risk assumed by them, the quality of their work, and the result achieved for the class. *See,*

---

[7] *See, e.g., In re Indep. Energy Holdings PLC Sec. Litig.*, 2003 U.S. Dist. LEXIS 17090, at *30 (S.D.N.Y. Sept. 26, 2003) (rates of $650/hour for a partner, and $300-$425/hour for associates, are "not extraordinary for a topflight New York City law firm"); *In re Bankamerica Corp. Secs. Litig.*, 228 F. Supp. 2d 1061, 1065 (E.D. Mo. 2002) ("[W]hile the hourly rates ranging up to $695 are high for the Eastern District of Missouri, they are nonetheless within the range of reasonableness in the realm of nationwide securities class actions.").

*e.g., Goldberger*, 209 F.3d at 54 ("We have historically labeled the risk of success as 'perhaps the foremost' factor to be considered in determining whether to award an enhancement." (citation omitted)); *Prudential*, 985 F. Supp. at 414 ("Because counsel who rendered services were not being compensated for their work as it was being performed and because of the significant risk that they might never receive any compensation if the action was unsuccessful, courts have, when warranted, applied a multiplier to the lodestar to arrive at a fair contingent fee.").

Berger & Montague spent over 12,000 hours on this case and their lodestar for the services performed by the firm is approximately $4.6 million. Lodestar multiples of over 4 are routinely awarded by courts, including this Court. *See, e.g., Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *56 & n.7 (2.48 multiplier "is within the range found to be reasonable"; collecting cases and noting that "[l]odestar multipliers of nearly 5 have been deemed 'common' by courts in this District" (citation omitted)). Here, Lead Counsel seeks no multiple of its lodestar. In fact, Plaintiffs' Counsel will recoup less than 36% of their lodestar. Not only is Plaintiffs' Counsel not receiving a premium on their lodestar to compensate them for the contingent risk factor, their fee request amounts to a deep discount from their lodestar. Thus, the lodestar "cross-check" unquestionably supports a percentage fee award of 30%.

### F.     The Reaction of the Class Demonstrates The Reasonableness of the Fee Request

Finally, "[t]he reaction by members of the Class is entitled to great weight by the Court" and confirms the reasonableness of the requested fees. *Maley*, 186 F. Supp. 2d at 374. The Notice mailed to members of the Class specifically indicated that Plaintiffs' Counsel would apply for a fee award of 30% of the Gross Settlement Fund, and that any class member could object to the fee application by October 19, 2007. No member of the Class has objected to either the Settlement or to Plaintiffs' Counsel's request for an award of attorneys' fees. This response suggests that the fee request is fair and reasonable. *Id.*

### III.   LEAD COUNSEL'S REQUEST FOR REIMBURSEMENT OF EXPENSES IS REASONABLE AND APPROPRIATE

It is well established that counsel who create a common fund are entitled to the reimbursement of expenses that they advance to a class. *See, e.g., Teachers' Ret. Sys.*, 2004 U.S. Dist. LEXIS 8608, at *17 (citations omitted). "Courts in the Second Circuit normally grant expense requests in common fund cases as a matter of course." *EVCI*, 2007 U.S. Dist. LEXIS 57918, at *57 (citations omitted); *see American Bank Note*, 127 F. Supp. 2d at 433; *Taft*, 2007 U.S. Dist. LEXIS 9144, at *35; *Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients" (citation omitted)).

As set forth in the affidavit of Plaintiffs' Counsel, the total unreimbursed out-of-pocket

expenses incurred by them to date are $774,329.29.  The expenses were incurred on an ongoing basis for such items as consultant and expert fees, photocopying of documents, mediation fees, court filing fees, deposition transcripts, fees for service of subpoenas to witnesses, on-line research, creation of a document database, messenger service, postage and next day delivery, long distance and facsimile expenses, transportation, travel and other expenses directly related to the prosecution of this Action, including preparation for trial.  All of these expenses are customary and necessary expenses for a complex securities action, and were necessary for Plaintiffs' Counsel to successfully prosecute this case to trial.  Moreover, Plaintiffs had no co-counsel or local counsel to perform any of these tasks.

The largest portion of the $774,329.29 in out-of-pocket expenses incurred by Plaintiffs in litigating this case was for accounting and damages experts retained by Plaintiffs, which comprised over $543,000, or over 70% of the total costs.  These expenses reflected the fact that this was a complex case which was litigated until a week before trial.

The prosecution of this Action was heavily dependent on expert assistance and testimony. The case involved a $10.2 million restatement of Veeco's financials and allegations concerning complex accounting, internal financial reporting and disclosure control issues.  Plaintiffs alleged that Defendants violated the Securities Exchange Act of 1934 by issuing statements and financial reports for the first, second and third quarters of 2004, by employing improper accounting at the Company's TurboDisc division, including alleged improper revenue recognition, and accounting for inventory, and warranty costs.  Plaintiffs requested and received over 225,000 pages of documents from Defendants and another 10,000 pages of documents from Defendants' internal auditor, Ernst & Young.

During the course of discovery,  Plaintiffs retained accounting and damages experts to assist Plaintiffs, including analyzing the documents produced.  During expert discovery, the parties exchanged expert reports and took and defended expert depositions. Plaintiffs' damages expert Steven P. Feinstein, Ph.D., CFA, opined on damages and loss causation, and their accounting expert, Robert W. Berliner, CPA, CFE, opined on issues of liability, materiality, and scienter with respect to the alleged fraud involving accounting and internal control issues.  The non-testifying expert assisted Plaintiffs in the factual investigation and analysis in connection with the amended complaint and during merits discovery, and also assisted Plaintiffs in preparing their submissions for mediation, including the two-day mediation in October 2006.  Expert accounting and damages testimony would have been crucial at trial, and Dr. Feinstein and Mr. Berliner were prepared to testify.  The expenses for Plaintiffs' accounting and damages experts totaled $543,196.49, as follows:

| | | |
|---|---|---|
| • | Non-testifying forensic accounting expert | $218,000.00 |
| • | Robert W. Berliner, CPA, CRD (testifying accounting expert) | $252,349.49 |
| • | Stephen P. Feinstein, , Ph.D., CFA (testifying damages expert) | $ 72,847.00 |

This Court and others have reimbursed such expert witness fees where "[t]he expenses incurred were essential to the successful prosecution and resolution of [the] Action." *EVCI*, 2007

U.S. Dist. LEXIS 57918, at *57-58.[8]

The Notice to the Class advised Class members that Lead Counsel would seek reimbursement of expenses in addition to attorneys' fees, in an amount not to exceed $775,000, exclusive of costs of notice and claims administration. Lead Counsel received no objections to this request. The requested expenses are well within the amount specified in the notice. Accordingly, Berger & Montague are awarded $774,329.29 for out-of-pocket expenses.

## IV.   AN AWARD OF REASONABLE COSTS AND EXPENSES FOR THE STEELWORKERS IS APPROPRIATE

The PSLRA states that "[n]othing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class."   15 U.S.C. § 78u-4(a)(4).

The Steelworkers were appointed Lead Plaintiff and, subsequently, Class Representative in this action. The Steelworkers expended over eighty hours valued at a total of $15,964.20, and incurred $125 of out-of-pocket expenses directly relating to the representation of the Class. From the outset of the litigation to settlement, the Steelworkers monitored the litigation and participated in prosecuting the case, including participation in discovery, subjecting itself to deposition, and reviewing significant pleadings and briefs. "Courts in this Circuit routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks*, 2005 WL 2757792, at *10; *see In re Worldcom, Inc. ERISA Litig.*, 2004 WL 2338151, at *11 (S.D.N.Y. Oct. 18, 2004) (awarding $5,000 to each of the three named plaintiffs who were involved in the litigation, had been deposed, and had "performed an important service to the class").

_____

[8] *See also In re Media Vision Technology Sec. Litig.*, 913 F. Supp. 1362, 1366 (N.D.Cal. 1995) (courts award consulting and expert expenses where the testimony is "crucial or indispensable" to the litigation at hand); *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1178 (S.D. Cal. 2007) (reimbursement for experts and consultants was "reasonable" given the "complex factual nature" of case in which experts opined on materiality, loss causation, and damages, which was "crucial or indispensable" to the litigation (internal quotation omitted)); *Uniroyal Goodrich Tire Company v. Mutual Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) (court reimbursed counsel for expert expenses where the expert testimony was "reasonably necessary" for plaintiff to prove its case); *In re Greenwhich Pharm. Secs. Litig.*, 1995 WL 251293, at *7 (E.D. Pa. Aug. 26, 1995) (awarding expert witness fees, which was "a reimbursable expense since expert testimony would have been crucial at trial"); *Hicks*, 2005 WL 2757792, at *10 (awarding expenses incurred by co-lead counsel including expert witness fees and other expenses "necessary to the litigation and settlement of [the] action").

The Notice to the Class advised Class members that Lead Counsel would seek reimbursement of $16,089 to Steelworkers for their reasonable costs and expenses, including lost wages, directly relating to its representation of the Class. Lead Counsel has received no objections to this request. Accordingly, the Court awards the Steelworkers $16,089.20 as compensation for their reasonable costs and expenses incurred in representing the Class.

CONCLUSION

For the foregoing reasons, the Court hereby awards: (I) attorneys' fees in the amount of $1,650,000, or 30% of the $5,500,000 settlement fund, together with reimbursement of Plaintiffs' Counsel's expenses in the amount of $774,329.29; and (ii) reimbursement of Lead Plaintiff Steelworkers Pension Trust's reasonable costs and expenses related to their representation of the Class in the amount of $16,089.20.

Dated: November 7, 2007

U.S.D.J.

BY ECF TO ALL COUNSEL